The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez, all persons having any manner or form of business before the Honorable of the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Good morning everybody, be seated. Welcome to the Fourth Circuit. We have three cases this morning for argument and we'll proceed with U.S. v. Cannady. Mr. Ryder Longmade, whenever you're ready. Thank you, Your Honor. May it please the Court, Parker Ryder Longmade for Defendant Appellant Germaine Cannady. Trial counsel's failure to object to the reinstatement of Mr. Cannady's career offender-enhanced sentence after this Court's intervening change in law in United States v. McCollum was ineffective assistance of counsel. I want to just briefly summarize why and then, unless the Court has questions on that issue, explain why competent counsel would have known that the mandate rule would not have been an impediment here. McCollum made clear for the first time in this circuit that the categorical approach applies to conspiracy offenses under Guidelines Sections 4B1.1 and 4B1.2 and that conspiring takes its contemporary meaning rather than its common law meaning and further requires an overt act such that any conspiracy offense that does not require an overt act cannot serve as a- Because McCollum didn't address an 846 conviction, which was at issue here. That didn't occur until 2019 in Norman, correct? So how does that impact your argument? That's right, Your Honor. But what Norman makes clear is that even though there was not plain error, it was a straightforward application of McCollum and the McCollum controls, and the only question in Norman was whether there was some confusion from the course 1994 decision in the United States v. Kennedy. And I think what is also clear from decisions like this course decision in the United States v. Carthorne in 2017 is that the plain error standard and the ineffective assistance of counsel standard are two different things. The real question here is whether defense counsel should have known that there was a viable argument that could have secured relief for her client. And the only issue, the main issue, but probably the only issue when the case came back down from the government's appeal in April of- Can we go back to a little bit before we even get to whether there should have been an objection? Why was re-sentencing even an issue? Why wasn't appellant's original conviction and sentence just not automatically reinstated upon reversal by us? Well, Your Honor, of course, the courts, there was no operative sentence because it had been vacated by the district judge before it went up. When the case came back down, there was no specific remand. There was no limited remand. The court just said further proceeding is consistent with this disposition. And so some action had to be taken. I think even the government says they say it's administrative. But at that point, the real question would have been what a competent defense lawyer would have done at that point and said is there any reason this sentence should not be reinstated? So even if there was some question about whether the mandate rule applied, I think the easiest way to look at this and the narrowest way to look at this is to say, okay, there's an exception to the mandate rule applied. We want to talk about United States v. Carthorne and the ineffective assistance of counsel's standard. What would have been counsel's duty at that time in May of 2018 when the government wanted to reinstate this sentence? Well, she should have thought, okay, is there any way I can prevent reimposition of the sentence? Because, you know, know what the law is. I've read McCollum. I can see the straightforward analysis. What could I argue? Well, this is a change in controlling laws. This is a dramatic change in precedent. I just want to walk through the three things that McCollum does because I think that Kennedy issues a little bit of a distraction. The three things that McCollum does, it first says, none of these things have been held by this Court before. We're going to apply the categorical approach to conspiring under the guidelines, Sections 4B1.1 and 4B1.2 for the career offender predicate. Now, Your Honor is right. That was in the crime of violence context in McCollum, but, of course, Application Note 1 to Section 4B1.2, it's the same language. It says, I believe it says something like crimes of violence and controlled substance offenses include conspiring to do those offenses. It's the same exact guideline. You would also point out that McCollum actually cites Martinez-Cruz, a Tenth Circuit decision, which looked at Section 846, conspiracy specifically. I believe that's page 308 at Note 6. So the tools were there. The next thing that McCollum says is we're going to, when we're applying the categorical approach, look at the contemporary meaning of conspiracy. And there's a dissent on each of these points, right? Look at the contemporary meaning. And then when you look at the contemporary meaning, say there's an over-the-act requirement. And when I say there's a dissent on each of these points, it shows that this was a change in the way that the court was thinking about these issues. Because on the first question, Judge Wilkinson's dissent in McCollum, he says, you shouldn't even apply the categorical approach here. This is just a plain text reading. If you conspire to do something that is a controlled substance offense, you have committed a controlled substance offense. He said, wouldn't even apply the categorical approach. Strong dissent on that point. The majority says no. Then he goes and says, OK, even if that's wrong, and he says in dissent, you shouldn't be looking at the contemporary meaning, you should be looking at the common law meaning. This court had a decision in 2015, Etienne v. Lynch, it was the Immigration and Nationality Act context, looked at common law meaning instead of contemporary meaning. And in common law, there was no over-the-act requirement for conspiracy. And then Judge Wilkinson also says in his dissent, even if you're going to look at the contemporary meaning, you should do what the Fifth Circuit said in Pascasio-Rodriguez in 2014 or 2015, where the Fifth Circuit looked at this and said, we know that there are more than 30 states that don't require an over-the-act, but we've looked at the Federal, excuse me, that do require an over-the-act, but we've looked at the Federal conspiracy statutes, and I think it's 142 of them by the Fifth Circuit's count that required it, that did not require an over-the-act, and only 24 that did. So they said, we think that Federal law is more important in this context with all the Federal conspiracy statutes. We come to a different conclusion. So these are three steps that are very important that lead the court to the place where it is. You have to ask whether there's an over-the-act requirement for any particular conspiracy offense to trigger that enhancement. So I think at that point, Your Honor's question about Norman, this is just, as Norman itself said, a straightforward application of the rule of McCollum. And how do we know that the lawyer in this case didn't do what you just described? Well, I would say two things. I would say there is no evidence that she did, but I think even if she Well, absent any evidence, why wouldn't we simply, if we agree with you, simply send it back and ask? Well, I think you could do that, Your Honor, but I don't think you need to for the reason that we explained in the brief, which is that what the lawyer does has to be reasonable and informed by reason of professional judgment. As we've explained, it's not reasonable to look at McCollum and just not make that argument. Well, certainly not in a vacuum, but we don't know what counsel below was thinking. Perhaps there's something lurking in the back that we just don't know about that might be resentencing hearing. So that's my question, is maybe the lawyer, maybe you're right, maybe this just went right over counsel. He had no inkling about the change in the law, but on the other hand, maybe he did and decided for whatever reason that this wasn't, that the defendant was better off where he was in terms of his sentence. Well, Your Honor, a couple of things. We can look at the only evidence in the record here, which is the affidavit from Mr. Kennedy. This is a J313. And he says defense counsel visited him in prison and conveyed to him that there was no need for the affiant, Mr. Kennedy, to have a formal resentencing hearing whereby his appearance was required. Well, that's one version of the story, right? Certainly, Your Honor. And if the court would want to send it back for development, that's certainly an approach the court could take. But I think the point that I'm making, Your Honor, is that this is a career offender in enhanced, which triples the guidelines range. This is a really draconian enhancement. You have the sentencing record before Judge Bennett, where he goes through and he explains why he's giving the sentence he's giving, which is the sentence he gives, yes, it's under the career offender range, but it's twice what the range should have been. It's twice what the top of the correct guidelines range should have been. And what he primarily talks about is Mr. Kennedy's prior offenses. And he says the guidelines range is a factor, and that's J179. And when he goes through again in the 2255 motion, what he says is the guidelines he says that the sentence was not entirely based on the guidelines range. Well, that is the point there is that the sentence was based at least to some extent on this guidelines range. And Mr. Kennedy got four or five years higher than the next closest defendant because of this career offender history in these prior convictions. Does the timing have any bearing? As I understand it, McCollum was decided two weeks before a mandate was issued. And then the lawyer for Kennedy, after the mandate was issued, consented to the reinstatement of the judgment. So whoever the lawyer was obviously had time to be made aware of McCollum, right? Judge Boyd, I think that's exactly right. So the court issues this decision on the government's appeal on Mr. Kennedy's case on March 9th of 2018. The court decides McCollum March 20th of 2018. The mandate issues April 2nd of 2018. The government files this reimposition of sentence motion on May 9th. And the court then reimposes the sentence on May 10th. Is there any restrictive language in the mandate that would prohibit judgment from looking at this sentence? There's nothing, Your Honor. It's just a general remand. It says further proceedings consistent with this disposition. So what you have, we've explained this two ways in the brief. And I think conceptually you can look at it either way. You can either look at it as the mandate rule doesn't apply, or even assuming the mandate rule applies, there is a well-established exception to the mandate rule for a change in controlling law. And I can explain how you can get to the same place on those. But what we have facing defense counsel is there's no operative conviction in the sentence because Judge Bittner What do you think would be the preferred way to do it? The mandate rule doesn't apply, or there's an exception to the mandate rule from your viewpoint. So, Your Honor, not to be presumptuous, but if I were to think about how to draft an opinion, I probably would use the mandate rule exception because it's a narrower way to approach the case. And I think much of the government's brief talks about counter arguments it has to looking at this as a mandate rule issue. This is a very unusual case. We did a lot of research about this type of case. How often does a district court grant a Brady motion, a new trial motion under Brady in the first place? Wipe out the sentence. It goes up to the Court of Appeals. The Court of Appeals reverses it. Probably very few cases where the district court grants a Brady motion. Probably even fewer where the Court of Appeals reverses it. So you have this very rare circumstance. If you're worried about floodgates, I don't think they're all there. And then in the interim, there's this case law that would radically reduce the sentence. That's right, Your Honor. So I think even if you approach this under the concept that the mandate rule doesn't apply, let me just see if I can explain why it would be that way. But I think conceptually, it gets to the same place as why there's an exception to the mandate rule. We point to three things. And all three things we think are true here and matter. And you don't have to decide the case based on any one of the things. The first thing is that the conviction and sentence are wiped out by Judge Bennett when he grants the Brady motion. The second thing is it's a general remand language. It goes to Judge Floyd's questions. Not a limited remand. The Court of Appeals didn't say, we're sending this back with instructions to reinstate the sentence. If it had, then maybe we could only rely on the exception because one could make the argument, the government could make the argument in that circumstance that the mandate rule did apply. And the third piece is that, of course, as Your Honor said, McCollum didn't come out until the case was on its way back down from the Court of Appeals. So that's a change in law. So whether you view that as there was no opportunity  and because the mandate rule, of course, applies to issues that were decided by the higher court, Supreme Court of Appeals, in the case or to issues that could have been decided and they were forfeited or waived. And as we explained, that wasn't the case because of the sea change in McCollum and those objections. You wouldn't have forfeited those objections based on a case that hadn't been decided yet. But I do think the easiest way to write an opinion, if the Court is so inclined, is just to say, even assuming that the government is correct, that the mandate rule applies, in this circumstance, McCollum was such an important change in law, the defense counsel was derelict in her duty not to understand the implications of McCollum and make an argument that had a real fighting chance for her client. I think I would just make a couple of points on prejudice because I don't actually think the prejudice is a hard question. Of course, you have to prove deficient performance and also prejudice. As I said, there's a very strong presumption the Supreme Court has repeatedly instructed. Most recently, Rosales-Morales in 2018, I believe, or more recently in Molina-Martinez in 2016, it's a presumption, which means the government has to show it doesn't apply, that if there's an error in the guidelines range and the correct guidelines range would be lower than the guidelines range that the Court used, then you presume that there's prejudice. And I would just point out here that in addition to the fact that the Court said the career offender status was a factor, we also have the Court saying at JA-172, acknowledging that the guidelines range is a starting point in the analysis. And of course, the basis, one of the key bases for the Supreme Court's case law, it's an anchor as a starting point where you expect district judges to start. And then he says later, he comes back and he says, you face this exorbitant amount of time just because you qualify as a career offender. So I think it's impossible to say that there is not a reasonable probability of a lower sentence if the guidelines calculation had been done correctly. It would have reduced by 2 thirds what the correct guidelines range was. And the last point I would say about this is the government's theory seems to rely on this proportionality notion. That Judge Bennett said, I have these multiple co-defendants. I want to sentence Mr. Kennedy proportionally with the others. I would just pick two. And the original sentence was a below-guidelines sentence. So even on re-sentencing, if the Court wanted to impose the same sentence, it would have to depart upward from the new guidelines. That's right. That's right, Your Honor. That's wildly disproportionate. That's correct, Your Honor. And of course, the Supreme Court makes clear the presumption doesn't turn on where the actual sentence was given. It's just to defeat the Supreme Court's presumption, and the government does cite some pre-Molina-Martinez case law, there'd have to be a very clear statement from the district judge saying, OK, I've calculated the guidelines. But I don't care what the guidelines say. I'm going 3553A all the way down. Here's why. And it doesn't matter if I get reversed. I mean, there are examples from the courts of appeals that were not, I don't think, in this circuit, but where district judges have said that. And they've managed to survive that kind of review. There's nothing like that here. And in fact, Judge Bennett says, in light of Washington getting 12 years, in light of Parker getting 121 months or 10 years, I would just point out that Washington was also sentenced as a career offender. He would not have been sentenced as a career offender for the same reasons Sir Kennedy would not have been sentenced as a career offender. So that drops out. And then Parker's had one serious prior conviction, but it was a bank robbery with a firearm. So if you're trying to compare the severity of the criminal history, you can't look at this and say Judge Bennett was not concerned about the career offender enhancement. It was only concerned about the underlying convictions. Thank you, Counselor. Mr. Moore. Good morning, Your Honors. And may it please the Court, Brandon Moore on behalf of the United States. Rules matter. And here, the mandate rule would have borrowed a McComb objection on remand. Kennedy one corrected one error, and McComb wasn't controlling or dramatic enough to revisit anything else, given the published binding cases that had all said that 846 was a career offender predicate. And against that backdrop, Mr. Kennedy's counsel did exactly what she was supposed to do. She considered the mandate rule and applied it correctly. At least, that's what the evidence shows thus far. How do we know that? We know that, Your Honor, from Mr. Kennedy's affidavit. There, he says, as my friend on the other side had said, that at some point, at least his version of the story is that at some point, she visited him in prison and said that there were no, quote unquote, extenuating circumstances. That, Your Honor, tracks with the exceptional circumstances language in Bell that triggers the- But there were extenuating circumstances. McComb had been decided. McComb had been decided, Your Honor. But as we all had pointed out on the other side, there were a couple of issues with it. The first was that it was about a completely different offense. We're talking about a 922G, even though it was under the same guideline provision, 4B1.2. And then the other issue is that it's concerning a racketeering conspiracy, a crime of violence, whereas this is something different. This is a drug conspiracy. So what you're asking Mr. Kennedy's attorney to do at that point is to take the logic from a case that could apply and then try to trumpet that up in the face of three cases. Just what attorneys do. That objection would not have been frivolous, would it? It's a possibility that it wouldn't have been. And the reason why I say that- What's the downside? It just seems to me that other than having to do a little bit more work, she might not have succeeded, but she might have. So it just strikes me as really odd that the lawyer simply would just say, well, never mind. I'm not even going to try. And I have three points to that. The first is I do want to make clear that I think there's some recognition that there's a mandate rule there. And the cases at the time are supporting her thinking, where they're all saying, OK, we have McCollum, but it doesn't discuss Kennedy or these other cases. It makes it more murkier than it makes it more authoritative or decisive. The second thing is there is a cost. I grant you that it is not as significant as the guidelines changing, but there is a cost. Because at this point, Mr. Kennedy has not yet had his direct appeal. The appeal was already paused for the sake of going up and looking at the tally sheet. It's back. There's a limited remand on that issue. And so you have to make the calculation. The issue he actually brings up on direct appeal is actually quite significant. He argued the multiple conspiracy issue. That was significant enough to trigger an oral argument and a published opinion. How are those two mutually? They're not mutually exclusive, are they? You can object and then appeal. They are not mutually exclusive, but I think this gets into the weeds of the sound trial sound trial strategy, because the multiple conspiracy argument, which she can lodge on appeal, is one that would actually eliminate the conviction and sentence if he's able to just to go pursue that. On our record, she's making the calculation that she could object to this, but she will likely lose and stall getting to the one issue they can raise that could potentially eliminate the conviction and sentence. And so based on our record, that's a reasonable strategy, because again, we cited cases in the Fourth Circuit saying that, well, we do have McCollum and Whitley at that point when we're getting to the Fourth Circuit cases, but that's muddling things. That's not enough to trigger the exception under Bell. And then the second thing is, I cited two district court of Maryland cases. People were lodging straightforward McCollum objections at sentencing, and they're losing in these cases. I see what you're saying about McCollum, but as far as I'm concerned, Kennedy controls. And so this is the analysis that she's doing at the time based on- Well, you're painting a picture, and that may or may not be compelling. The problem is we don't have that picture in the record. You're making a number of assumptions, I think, some of which might be reasonable, but some suggest pure speculation as to what the lawyer was thinking about. And to your point on opening, Judge Diaz, I think at bottom, this doesn't require a whole scale reversal and resentencing. I think this requires a chance to at least hear from her on what her thinking was. Because quite frankly, there's two parts to this. The one piece of evidence that we have is that she is thinking about the mandate rule, and it's reasonable to think that she can conclude that way at the time. And it's reasonable in light of the case law controlling mandate rule period. What would she have concluded about the mandate rule in your view? She would have concluded that even if McCollum had been there, it would not have been controlling or dramatically changing enough to be able to overcome the mandate. So that there wasn't an exception to the mandate. That is correct. And then the other component to that is this kind of collapse into the prejudice. Because we have what I believe is a very robust sentencing transcript that makes very clear that although the career offender guidelines did apply, it did not have the relevant meaningful impact on the sentence, such that you could conclude that if the guidelines were different, that he would reach any other different sentence. Wait, didn't the district court sentence Mr. Kennedy to 192 months? That's correct, Your Honor. Which was below the guidelines, the 262 to 327 months, correct? That's right, Your Honor. The new guidelines would be 77 to 96 months, correct? That's right, Your Honor. So if he wanted to impose the same sentence, he would have to not downward depart, but upward depart to 192 months. How is that not a significant change and difference in the way that district court may have been thinking? Sure, there are a variety of factors. And prejudicial. Absolutely, Your Honor. There are a variety of factors at play. I think the first is we can look at the record as to what he said. The first thing he says is he comes up. By he, you mean the district court? The district court, yes, Your Honor. I apologize. But we can first look at what the district judge said. The first thing is he comes up four times and he says the career offender guidelines are not reasonable, four different times. And I think that's important for one reason. And the fact is we only know that the guideline range is 77 to 96 months, because the district court told us. We walk into the sentencing hearing that day, believing that there's a certain drug amount weight that's there that triggers the A51 enhancements. If it weren't for the district judge not believing that the evidence at trial warrants something, not even 20 years, in scrutinizing the government's evidence, Mr. Kennedy is not walking out of there without a 20-year sentence to begin with. The district judge is the one who both triggers those 77 to 96 months and breaks for lunch, makes probation go calculate, and then comes back and says, government, this is the range at the bottom. This is the range with the career offender guidelines. Let's go to the 3553A factors. So he's aware of both of those ranges. The second thing he says is, having eliminated the 20-year mandatory minimum, he tells us two things. One, that's a fallacy. And two, they're mercifully gone. Mr. Kennedy doesn't even deserve that. So we know 20 years is out of the question for the district judge. And we also know that the career offender guidelines are out of the question because he tells us four different times. He then notes that Mr. Kennedy was in federal court for the third time. He said that Mr. Kennedy was on two separate terms of supervised release. And he said, as we all agree now, the most important factor was the sentencing disparities. And Your Honor, I was thinking about this a lot leading up to argument. I think there's what we read in the record, and I think there's what the record says. And I think it's really important to place context as to when the sentencing had happened. Most, if not all, of the defendants were sentenced within three months of this nine-day jury trial. The district judge is hearing all of this evidence. He's very familiar with all of these defendants are. And I point out to you that he starts the sentencing hearing by ticking off the defendants who he had just sentenced and telling the parties, this is what I did. This is what I did. This is what I did. He corrects the government on what the evidence showed at trial, what happened at trial, what happened at these other sentencing hearings. And even Mr. Kennedy's lawyer says, hey, I went to Mr. Agnon's sentencing hearing just last week, just last week. And it's because his counsel knows that it's more important what everybody else gets leading up to Mr. Kennedy's sentence than the career offender guidelines. Their sentence has a package. And all three people involved, three parties, I should say, the government, Mr. Kennedy's defense counsel at the time, and the district judge, their main arguments are this is the offense. This is how everybody fits in. They're all sentenced closely related in time. You're keeping track of what everybody else gets. And they're trying to figure out where everybody fits. The government says twice that the guidelines are irrelevant to them. They don't even bother with that. They think that where Mr. Kennedy fits in with everybody else is somewhere at the top. Mr. Kennedy's lawyer, just having sat in on somebody else's sentencing hearing trying to get a sense of where he fits in, says, hey, on the one hand, this is a very serious offense. But it's not as serious as these two guys. But I recognize that for Mr. Parker, who's in the car with him, he has a more significant sentence. So that's the range. That's the range that Mr. Kennedy's counsel comes up with, something in the middle of these nine defendants. That is the driving factor. And when we talk about why, specifically, 192 months, why? If I may, I want to read this statement from the district court. It says, JA-179, according to my calculations, 192 months comes out to 16 years in this case. It's greater than some of your co-defendants, because your record is more severe. But there has to be some proportionality to it. In light of Washington getting 12 years, and Agnot getting 10 years, and Samson getting eight years, and Parker getting 10 years, I think that's a little bit more proportionate of a sentence. That doesn't change if the guidelines change. That is the district judge telling us exactly where Mr. Kennedy, at that time, fits in with everybody else. And then this is what puts this, I want to make clear, on entirely different footing than the cases where we see guidelines prejudice. I'm talking about Freeman. I'm talking about Carthorne. Cases where either the parties, they, and I apologize, maybe not Freeman, but specifically Carthorne, cases where the parties are coming in, either with a guidelines recommendation, it's very clear that it's tied to that, or if there's such a disparate sentence, and the judge says absolutely nothing, just has the career offender guidelines, and then it appears as though he just gives something either above or below or within that. This is completely different. Not only are the statements within the sentencing transcript supportive of the fact that he gave a specific sentence, but it's also just that the circumstances, the surrounding circumstances of the sentencing itself, and then the steps that people took heading into the sentencing. And then I can even break it down even further. I think one of the even more telling statements that the district court makes is that your criminal history is but that doesn't justify more than five years than Antoine Washington, and then lo and behold, he gives them within five years of Antoine Washington. I think if you have a district judge who comes in, eliminates the mandatory minimums, tells you what the other guidelines are, and then eschews, it says four times that the career offender guidelines are unreasonable. That's not a district judge who's putting significant enough weight on that to then say that the guidelines are different. Well, but he doesn't completely eliminate. I mean, he says throughout that there are factors. So that's the problem we have here. I don't think it's- It's not a problem. I mean, it's entirely appropriate. He's supposed to- Which is what my response was gonna be, Judge Diaz. So the problem I think Mr. Kennedy has is that if he says nothing about the guidelines, that's a Booker problem. Booker requires him to correctly calculate the guidelines, which he does. It also requires him to consider them, which he has to do. And then that's precisely what he did. I think that's what he does at the front end when he concludes after his calculations that Mr. Kennedy is a career offender. That's the conversation that he's having with Mr. Kennedy's counsel when he's going through his recommendation for a sentence. He stops him and says, counsel, your client's a career offender. He doesn't put him on a different footing. It's not to suggest that the career offender is the end all, be all. That's the logical response to putting Mr. Kennedy in the middle. He's saying, your client, I understand, also has a more significant criminal record than many other people. And the fact of the criminal record puts him on a different footing. Not necessarily that he's a career offender. And then at the end, I would say, in his opinion on the 2255, he says, the career offender's not the only factor I considered, which is true, but he's saying that not because to signal that the career offender was one of the two, but that it's one of the constitutionally required things that he's supposed to consider. If he doesn't say career offender, we'd be back here on that instead. And if it's just the mere fact that we mentioned the word career offender, then that's every single case. That would eliminate cases like Molina-Martinez, which stand for the fact that it's not just the fact that the guidelines change, but that we can point to areas in the record to assuage ourselves of concerns. That was the thing that would have affected and caused prejudice. If I may, I wanna go back just to one point on the general remand interplay that we had in the opening. The two things I wanna say is that the remand language from Kennedy One, it was general, but I think it would circumvent precedent to just say that because it was general, that means everything is up for grabs. And on that point, I point your honor's attention to Pellegi and Soucy. I think theoretically, I think legally what those stand for is the fact that when we're looking at the remand language, even if it is general, we're not just carrying out the letter of the remand, we're carrying out the spirit. We look at the circumstances of the opinion in the case. There was one issue raised, one issue corrected, it came back, and we were limited to just that issue on review, unless, of course, exceptional circumstances existed. The second thing is this idea that there was no operative sentence. And technically, that's true. We had to move to reinstate the judgment in the sentence. But the idea that these things substantively fall away just because we corrected an error that was procedurally before that, it's just it's not supported by case law and it's just not workable. And again, I point your honors to Pellegi and Soucy. Pellegi says when you remand to fix the length of imprisonment, the restitution order doesn't just, excuse me, the restitution order just doesn't disappear, you put it back. Soucy says when you go back to fix a 3553A or the previous guidelines don't disappear, you put those back. Those cases stand for the proposition to where if you fix your error and it doesn't require you to fix anything else, you leave those things alone unless there's a reason to do so that triggers the exceptions in Bell. The second thing, as I said, is that it's unworkable. And that, take for example, Judge Bennett had erroneously dismissed the indictment. If that comes back on remand, there's no expectation that this leaves the initial appearance of programs, the detention hearing, motions hearing, trial sentencing, there's none of that. We go back to the point in time, the error happened, we fixed it, and then we move on. And so, for those reasons, Your Honor. Well, but in a case like that, I suppose one could say that if the issue isn't raised in the first instance with the district court, then we can make a distinction between issues that are weighed or not. But here, there would have been no basis for making the McCollum argument because McCollum hadn't yet been decided. On the front end, but that's why the exceptions, right? One of the exceptions is if there is a dramatic change in controlling law. And if that happened, say if it were, say if McCollum were right on point, say if it's Norman, he would have a much stronger argument if it's Norman. That's right on point, it's a dramatic change, all of a sudden, he's no longer a career offender, right? Then you would start getting into that pocket. But here, this is not that case at all. This is McCollum, this is something else, this is a different offense, different underlying offense, different prior offense. And you have three binding precedent sitting there that it talks about, not at all. And so you're making that kind of assessment. And quite frankly, Your Honor, the standard even contemplates that, says you don't just get to go back and have a free swipe. You don't get the benefit of a rescue on remand to take a second chance at something that did not come up the first go around. And so had the case been in different footing, he may be able to survive Bell in a different way, but in this particular circumstance, he didn't. And so for those reasons, I think that his counsel acted very reasonably, and even thinking that the mandate will apply, let alone concluding that it did based on the record that we have. And we have a substantial record at sentencing showing that his sentence would not have been any different absent the career offender guidelines. And so for those reasons, I respectfully ask that you affirm. Thank you. Thank you, Mr. Moore. You have some rebuttal time, Mr. Ryder-Longmead. Go ahead. Thank you, Judge Diaz. I want to just make a few points about prejudice and then a few points about the mandate rule exception. I don't think the government's argument can be squared with Molina-Martinez and Strickland. We just have to have a reasonable probability of a different result. That's all that's required. Molina-Martinez makes clear that the way that standard, that well-trod standard applies in the guidelines context is you have an erroneous guidelines calculation, there's a presumption. If the correct range would have been lower, then there's prejudice. And we know, as your Honor also noted, that the guidelines were a factor. If you want to read them in J179, where Judge Bennett says, you have been bumped up to a higher category because of being a career offender, so it is a factor here. That's all we need. One extra day in prison is prejudice. That's what the Supreme Court has said, Glover versus United States. So I don't think there's anything to the prejudice argument. If you want to talk about the proportionality principle, as I said, Washington was erroneously sentenced as a career offender, the same analysis would apply there. You can't have a proportional sentence to Washington if his sentence goes out the window. So I don't think any of that really works. About the, the other point I would make about prejudice is the government suggests that somehow these cases decided by the District of Maryland, which of course doesn't bind this court, it wouldn't bind another judge or even the same judge in the District of Maryland. Even all that's beside the point because when you look at prejudice, hindsight is 20-20. Not the case for deficient performance, is the case for prejudice, Lockhart versus Fretwell. There are other cases also from this court that say that. Just to talk about the procedural posture of the case and the mandate rule exception. I hear most of the government's arguments being about whether the mandate rule applied in the first instance. We had a call up earlier about the best way to do this. I think you look at the exception. I don't hear a strong argument against applying the exception here because of McCollum's intervening change in law. And I just want to say the government's argument seems to be that Kennedy was controlling precedent. And then it says McCollum muddied the waters and left it an open question. Even on the government's account, that's a change in controlling law. But I would say all you have to do is look at Norman 935F3239-40 to see the problems with reading Kennedy and the two other cases, which are Walton and Brandon, that the government points to here to read those cases as controlling precedence. Just really quickly, this is what the court says in Norman. But of course, neither party addressed whether Section 846 conspiracy is a controlled substance offense in the Kennedy case. There were two holdings that revolved around 846, but one was just whether the sentencing commission had authority under Section 994, or another statute, to make conspiracy offenses, controlled substance offenses. And the other was a holding about whether the district court had authority to make factual findings about when a conspiracy began. Those are two different issues. In Walton, the question was about aiding and abetting and whether that qualified, which is not conspiracy here. And Brandon doesn't even mention Section 846 at all. So I think you would have a defense counsel who'd read McCollum, straightforward analysis. I know it's not the exact same offense, but Judge Wilkinson's dissent says basically says, you're about to open the floodgates because most federal conspiracy statutes do not require an overt act. I mean, that is a red flag right there for defense counsel to say, what about the conspiracy statute in our case? So if there are no further questions, I would ask the court to reverse the judgment of the district court and remand for resentencing without the erroneous guidelines offender enhancement. All right, thank you both for your fine arguments. We really appreciate your being here this morning. We would typically come down and greet counsel. We are not able to do that because of our COVID restrictions but hope to do so in the future. Hope you'll come back so that we can do that. And Mr. Rider-Longmaid, I see that you are a court appointed. I wanna thank you for taking on the assignment. Both counsel did an excellent job here today. Mr. Rider-Longmaid, I don't think you came up for air once during that argument. I would simply, just a suggestion, you might wanna try to slow down a little bit because you did a wonderful job but I sometimes have difficulty keeping up with you. It may be that I didn't have enough caffeine this morning but you leave here with our thanks for taking on this really interesting case as does the government. Thank you both for your arguments. We'll move on to our second case. Thank you.
judges: Albert Diaz, Stephanie D. Thacker, Henry F. Floyd